HERMENEGILDO HANCE, Plaintiff and Appellant, *v.* R. MÉNDEZ & HNOS., Defendant and Appellee.

No. 7129.   Argued June 15, 1937.—Decided November 24, 1937.

*Luis Apellániz Storer* for appellant.   *R. Díaz Collazo* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This is an action for damages in which judgment was rendered against the plaintiff.

It is alleged in the complaint that on May 14, 1934, the defendant partnership was the owner of a truck devoted to the transportation of merchandise, which was being driven along the insular highway number 3 by one of the partners, Alejandro Méndez, and that Leonides Hance, an employee

of the partnership, was riding upon the platform of the truck; that upon taking a curve, Méndez did not reduce the speed, and that, being in the middle of the road, he swerved sharply upon meeting another truck going in the opposite direction, throwing Hance off onto the road, who fractured his skull and died as a result of the fracture.

It is further alleged that Hance was holding on with his hands to one of the wooden divisions on the truck, which, in spite of the fact that it was loaded, had no lateral guards; that Hance was 19 years old, was active and in good health, had finished the eighth grade in the public schools, and was earning a dollar a day with which he was assisting his parents, who are his only heirs, his mother being confined in the insular insane asylum.

The complaint was filed by the father. He claims damages in the amount of $10,000 for his mental suffering and material losses.

The defendant admitted that it was the owner of the truck, that it was being driven by its partner, Alejandro Méndez, that Hance was an employee of the partnership, that he fell and died; defendant contended, however, that the fall was due to the negligence of the employee himself, in that he was seated upon an oil drum which rolled on account of the natural movement of the vehicle in taking the curve, as a result of which Hance lost his balance and fell at the very moment in which another truck was passing; that the latter truck ran over him and caused the injuries resulting in his death.

Defendant further averred that the parents of Hance, taking advantage of Act No. 85 of 1928 (Laws, p. 630), had filed a claim with the Industrial Commission, which had rendered a final decision, and that the plaintiff was therefore without a remedy in the courts.

The case went to trial, and the lower court, as we have already stated, decided against the plaintiff. In the state-

ment of the case and opinion, the court expressed itself, in part, as follows:

"The scene of the accident was inspected by the court . . . it is a curve which on account of the natural topography of the soil is blind from one side to the other, that is, from the two angles joined by the curve. The highway has a width of 6.8 meters at the place in which, according to the evidence, the two vehicles met. Defendant's truck from the measurements made by the marshal in the presence of the court, is 2 meters wide, and the other one meter 92 centimeters. It appears that when defendant's truck, according to the evidence, reached the apex or angle of the curve and at a point very close to the apex or sharpest angle of the curve, and at the moment at which the other truck going in an opposite direction passed that of the defendant, a drum (steel barrel) fell off, and immediately thereafter the body of Leonides Hance Mateo fell to the road. Defendant's truck was loaded with 93 boxes of noodles and 3 empty drums. None of the boxes fell off, nor did any of the other drums. The vehicles did not collide, and there is nothing to sustain the allegation of the defendant that the other truck ran over or injured the deceased. The only eye-witness of the accident, that is, the only witness who saw the fall, Pelegrín Torres, is unable to give an exact description of how the fall took place. The defendant offered in evidence a document sworn and subscribed before a notary public by this same witness giving a version completely contrary to that given at the trial. From a consideration of all the evidence, the fact is that the deceased Leonides Hance, who on that day had been working as a laborer for the defendant, was riding on the platform, but we do not know whether seated or standing; that when the defendant's truck took the curve to which we have referred in our ocular inspection, another truck coming in the opposite direction passed it; and that without any collision or disturbance whatever, immediately thereafter a drum fell to the ground, of the three which were being carried as part of the cargo, and that following the drum, Leonides Hance Mateo fell to the road, and suffered injuries as a result of which he died.

"Let us see whether the acts of negligence averred by the plaintiff have been established by the evidence. Leaving aside the testimony of Pelegrín Torres, Francisco Rivera characterizes the speed of the defendant's truck as 'quite usual;' Ana María Pérez characterizes it as 'high speed;' Ramón Rivera Vizcarrondo testifies that prior to the accident defendant's employee passed him in his truck

at a speed greater than that at which he was travelling, which was from 30 to 35 kilometers per hour; Secundina Conde, that 'he was going at a fast speed;' Eladio Mulero made a similar statement. They all agree that the defendant's truck was travelling in the middle of the road. It does not appear from the evidence that any other part of the merchandise which the truck was carrying fell; that the vehicle collided with the other, or that any of the other laborers who were riding on the platform fell.

"There is no statute in Puerto Rico requiring that a truck be provided with lateral guards around its platform to prevent persons riding thereon from falling off. Similarly, it does not constitute negligence *per se* that a vehicle was travelling in the middle of the road, if the road is open and there is nothing to raise a presumption that there is any immediate danger. In the case of *Aguayo* v. *Municipality of San Juan*, 35 P.R.R. 390, the evidence tended to show that the driver of a municipal owned vehicle was driving in the middle of the road, and it was held that it does not generally constituted actionable negligence for the driver of a vehicle to occupy any part of a road when not passing any vehicle or person. The general rule in actions based on negligence is that the occurrence of an accident creates no presumption of negligence, unless the circumstances surrounding the event causing the injury are such as to offer a basis for a reasonable inference that if the person under a duty to do so had exercised due care, diligence and zeal, the accident would not have happened. This doctrine is cited in the case of *Correa* v. *The Fajardo Sugar Co.*, 29 P.R.R. 318. It is also a well-known rule that there must be at least a reasonable showing of negligence.

"Plaintiffl advances in his brief the proposition that the inference to which the analysis of the evidence may logically lead us is that the accident occurred by reason of the fault or negligence of the defendant's agent, and that the doctrine of *res ipsa loquitur* is applicable. Here the defendant has offered a satisfactory explanation of the facts, and his only offense has been to pretend that this accident was submitted to the Industrial Commission of Puerto Rico for decision, that that board might pay indemnity to the plaintiff on account of the accident. Such is the inference with plaintiff draws from the contradictions in the evidence which we have noted. We have already mentioned that there is one witness, Pelegrín Torres, whose testimony must be discarded in spite of the fact that he was an eye-witness of the event. The statements which he made in testify-

ing before the court and those which he made before a notary make his testimony entirely worthless, since in each case he related the occurrence of completely impossible events. However, taking the testimony of the other witnesses and weighing their mental capacity, we have concluded that those elements of proof are lacking which would leave satisfied the mind of the judge in entering judgment for the plaintiff in this case, for the reason that the evidence is so defective, ambiguous, and vague as to leave no sufficient basis for such a judgment. In *Pacheco* v. *Méndez*, 41 P.R.R. 692, reference is made to the doctrine of *Cruz et al.* v. *Frau*, 31 P.R.R. 87, as to the duty of a driver of a vehicle when taking a curve to reduce speed, since he has no knowledge of what he may find around the curve, and considering the fact that if one has absolute control over the machine, by going at a moderate speed, an accident may be avoided; but in this case, it is the witnesses for the plaintiff himself who do not establish the excessive speed, in the first place, and in the second place, because from what we saw of the place where the events took place, we believe it impossible for a heavy motor vehicle to take the curve in question at a speed sufficiently great to cause a drum to fall off, a drum being a heavily constructed thing, which according to one witness, weights 150 pounds. Nevertheless, none of the wooden boxes used to pack noodless, which were empty and which made up the greater part of the load on the truck, fell off, nor did any other person suffer a blow, wound, or accident by reason of the fact that the defendant's agent took the curve in the manner set forth in the complaint. The fact that the truck belonging to the defendant appears at a greater distance than that averred by the plaintiff in the complaint is of no importance if consideration be given to the fact that toward the west, that is toward San Juan, the highway follows a considerable slope, and if, furthermore, consideration be given to the fact that according to our measurements, the distance from the place where the boy fell off to that where the truck stopped is about 3 of 40 (*sic*) meters. It cannot be expected that a heavy motor vehicle will stop automatically and without leaving deep marks or grooves on the highway, or that the occupants of the vehicle would not be aware of such a sudden stop. None of this appears from the evidence. The fact that in this case a young, robust man, of some education, has lost his life, does not in itself lay a sufficient basis to charge the defendant with negligence. We believe that a person boarding a vehicle such as that of the defendant, a motor truck dedicated to the transportation of merchandise, assumes a certain risk of any injury that may result. While not entirely

in point, the doctrine of *Rivera* v. *Graham,* 34 P.R.R. 1, may, nevertheless, be taken as a basis for this doctrine.

''After weighing all the evidence adduced in this case and after studying the testimony of the witnesses for both sides, and after considering the observations which the Supreme Court of Puerto Rico in the case of *Pacheco* v. *Méndez, supra,* speaking through the late lamented judge and jurist, Hon. Jacinto Texidor, as to the probative value of the testimony of witnesses, we have come to the conclusion that the plaintiff has not shown the acts of negligence with which he has charged the defendant, and that therefore his action does not lie.''

In his brief plaintiff maintains that the court erred in finding the facts, in exonerating the defendant from blame and negligence, in weighing the evidence, and in holding that the doctrine of *res ipsa loquitur* is inapplicable, and attributes to him bias and prejudice in so doing.

Let us examine the evidence. To show plaintiff's marriage with Laura Mateo, the birth of Leonides Hance, and his death, plaintiff presented three certificates which were admitted without objection from the defendant. Over objection, another certificate was admitted as evidence that Leonides attended elementary school.

Oral evidence was then begun. Plaintiff himself testified. He stated that he was advised of the accident and went out in search of his son, finding him at last very badly off in the Clínica Miramar; that he went to see Alejandro Méndez ''and he told me that the boy was coming on the truck and was hurt there in Piedras Blancas. 'I have tried to do you a favor by taking the case to the Commission so that you won't come off badly, although he was not working. I was taking him along so that he could handle some bags that it was going to leave there in Santurce;' '' that he returned to his house in Loíza and on the day following they told him that his son had died, he came and saw his body; that his wife is in the insane asylum; that by her he has had five children with whom he lives in his house; that Leonides was 19 years old, was naturally strong and was helping him in

his work, making from 90 cents to a dollar a day which he spent on himself and on the expenses of the house. He estimated that the material loss which his death had caused him was six or seven thousand dollars, and that he had made claim for a total of $10,000.

Pelegrín Torres was next called; he testified that he was a laborer on the truck of Méndez & Hno. which Alejandro was driving on the day of the accident, May 14, 1934; that there were also riding on the truck Leonides Hance, Alejandro Ortiz, and another called Luis, that the truck was going rapidly along the middle of the road, and that on approaching the curve it gave no warning; that on the curve "it met another truck going up and on account of the speed at which it was travelling, made a zigzag and a drum fell off and after the drum Leonides Hance fell to the road;" that there were four drums riding loose on the platform; that Hance was riding in front of him, a little to the left, between two standing drums.

Upon cross-examination he testified:

"Q. So that what you mean to say to the court is that there were about 100 empty noodles boxes?

"A. Fifty three.

"Q. With a tarpaulin on top, not tied?

"A. The boxes were not tied, the tarpaulin was tied on top, where it was put on.

"Q. Then the boxes did not move?

"A. When the truck zig-zagged, the boxes fell off to one side.

"Q. On the rear of the platform of the truck there were four drums?

"A. Four drums. . .

"Q. Those drums were not fastened down?

"A. No, sir, at no time. . .

"Q. And Leonides was not seated upon a drum?

"A. No, sir, he was standing up. Here is a drum, and here he is, leaning upon the bar. . . .

"Q. In your opinion, did Méndez take the curve very fast?

"A. If he had not taken it so fast, the accident would not have happened. . . .

"Q. Did Hance's fall, if you know, occur at the moment at which the two vehicles met, or was it more or less before they met, or after they met?

"A. The boy's fall took place exactly at the time Alejandro Méndez swerved when he saw the other truck.

"Q. But did the boy's fall take place more or less before, at the moment, or after the meeting with the other truck?

"A. At the very moment when he did this, toward the inside, the boy fell on the rear of the other truck.

"Q. And there was no collision with the other truck?

"A. No, sir. . . ."

Francisco Rivera was then called to the stand; he testified that he was standing on the highway, on the Piedras Blancas curve, and saw the truck of R. Méndez & Hno., driven by Alejandro Méndez, "and in front there was a man riding with him and behind there were three people, and when they got there to the curve, at the very middle of the curve, the other car appeared, ... he then tried to get out of the way because he was travelling fast and a little from his right, and then when he did that, tried to turn the wheel to get on his right, then .... a drum fell out and after the drum a boy who fell to the ground and crashed on the surface of the road."

Francisco Carrillo, the next witness, testified that he was living near the Piedras Blancas curve, that he has just let loose two yoke of oxen and in coming out on the road, he saw "the truck of don Alejandro" which was travelling from Carolina to Río Piedras, and on meeting another belonging to Jesús Arroyo going in the opposite direction, it had to swerve because the curve was quite closed, and it was going pretty fast, and "a drum fell out first and the victim next."

Ana María Pérez testified that she was living on the border of the highway and heard the noise of "a truck coming very fast, and while that truck was going very fast, there were some men riding on the truck and one of them says 'Gallego, Gallego, Gallego, stop, stop, you have killed some-

one.' He kept on going and much lower down from my house he stopped.... The truck was going very fast, it was travelling much too fast.... I went down to the patio of my house, where there is a door opening onto the highway, and from there I looked up above, and when I did look up above, I saw a man lying in the road.... Then I ran up to my house, I got a bucket of water to go and throw it on him, thinking that he was alive, but when I got there with the bucket of water, they told me, 'Don't throw any water because he is already dead.' But then, in a few minutes, he gasped and stirred, and we then threw the bucket of water on him.''

Ramón Rivera Vizcarrondo, marshal of the municipal court of Carolina, testified that he was riding in his car from Carolina to Río Piedras, at a speed of about 30 to 35 kilometers, and that Méndez passed him in his truck near the Piedras Blancas curve, and that when he got to that curve, he found a young fellow stretched out on the highway and people running toward him, that he stopped and saw the truck about 50 or 60 meters away.

Jesús Arroyo, the person driving the other truck, testified in substance that he was returning to Carolina with his truck loaded with about 80 hundredweight, slowly, going up a hill, and that he met Alejandro Méndez who was travelling pretty fast taking a curve ''and on meeting me, he turned the wheel to the right'' and ''a drum fell off and then a man;'' that he was keeping to the right and Méndez was in the middle of the road, ... that he had been driving for 8 years, ''when I carry drums, when they are full, since they weight about five hundredweight, they can be carried that way, loose, but when they are empty, they are carried fastened down; ''that Méndez' truck had uprights in the front, middle, and rear,'' not laterally, ''the drums were standing up and had a rope like this.''

Secundino Conde, who was riding in the front of the truck with Arroyo, said that they were going slowly, keep-

ing to their right, because they were heavily loaded and were going up a grade, when they met Méndez' truck on the curve, which was going at a high speed; Méndez "when he became aware that we were there, swerved to his right, and in swerving to the right, an empty gasoline drum fell out, and at the same time as the drum fell, a boy fell off in the very middle of the road; just then we swerved our truck to a smooth grassy spot there, an entrance to Los Mameyes, and there we stopped."

Eladio Mulero, who was driving another truck coming behind that of Arroyo, testified that when Méndez met Arroyo, "he swerved to get out of the way of the truck meeting him on the curve," and Arroyo "made for the ditch there and stopped with a wheel on the slope, and Mr. Méndez swerved, and then the drum fell and the boy this way...."

To the question, "Did you notice whether the truck driven by Alejandro Méndez was keeping to the right in taking the curve?" he answered: "No, that was the reason why he had to make the zigzag, because he took the curve in the middle of the road."

Raimundo Pagán, district chief of the insular police, went to investigate the accident at the place where it occurred, and Méndez told him, referring to Hance, that "although he was not employed on the truck, you can put him down so, because he was working for me before, we would put him down so," which the witness refused to do.

José Dolores Ríos, also district chief of the insular police, testified that Méndez told him "that this boy (referring to Hance) was riding on the truck, that he was going to take care of some bags, that he was taking him to San Juan to take care of some bags while the laborers were loading, and that since he was the son of a man whom he liked and respected and was employed on the truck, he would report the case as that of a laborer to the Industrial Commission...."

Antonio Falú accompanied the plaintiff when he came to San Juan to see his son in the hospital and then went with him to see Méndez. "I went and talked with Méndez, and he told me that the patient was already in the Clínica Miramar, and that Hermenegildo needn't worry because of what had happened to him, although he wasn't working, that he was taking him to sell some bags in Santurce, that he looking for a way to fix the matter up. Then he came to the car and he himself explained to Hermenegildo Hance in front of Rafael Budet and Pelegrín Torres...."

Jesús Arroyo was again called and testified as follows:

"Mr. Apelláñiz: Where on the curve did you stop your truck?

"A. I stopped at the entrance to Los Mameyes, which is an entrance there on this same curve, that a truck comes out this way, and leaving the tar road, I went in this way, blocking the entrance to Los Mameyes.

"Q. With respect to the accident at what time did you stop?

"A. At once.

"Q. Why were you able to stop at once?

"A. Because I was going slowly, going up around a curve, heavily loaded.

"Mr. Apelláñiz: Nothing more.

"Court: The other side.

"Mr. Díaz Collazo: Nothing.

"Mr. Apelláñiz: Then, we have finished our case."

The defendant made a motion for nonsuit, which was overruled. He introduced his evidence. Ramón Arias, an employee of the Maryland Casualty Company, was the first witness. He was shown a document, and testified that it was the affidavit which had been taken from Pelegrín Torres, the witness for the plaintiff, before Notary Public Ríos Algarín. That he had not made any threats or promises whatever to the witness.

The notary Ríos Algarín was called, and identified the document as the affidavit of Torres sworn to voluntarily before him by the witness, after he had read the same.

The document was offered in evidence and was admitted "not as evidence in the case, but to impeach the testimony of Pelegrín Torres to the extent that he, on prior occasions, made statements contrary to those which he made in the witness chair."

The affidavit states " that on May 14, 1934 we left Canóvanas for San Juan in the Day Elder truck, license H. P. 65, driven by Alejandro Méndez, we three laborers, Leonides Hance, Luis García, and I. That we three were riding on the platform of the truck, but Hance was seated upon one of the three drums which we ourselves had placed on the platform on leaving Canóvanas. That on the way, while our truck was going at a moderate speed and while taking a curve, the drum on which Hance was seated turned over, and Hance fell to the road at the very moment in which another truck was coming in the opposite direction, which ran over him, causing him serious injuries. That we picked him up there and took him to the municipal hospital in Carolina, and from there they took him to the Clínica Miramar where 1 understand he died. That I know that Mr. Hance was an assistant laborer on the truck and on that day was coming to load with us in San Juan. That the person driving the truck on which I was riding, Mr. Alejandro Méndez, was in no way to blame for the accident, since at all times he was driving very cautiously and at a moderate speed."

Luis García Vizcarrondo, a laborer on the defendant's truck, was the next witness. He testified that Hance was riding on the rear, standing, sometimes sitting down on an empty drum; that "on entering the curve this other truck came along, and Alejandro took the curve on his right, when he pulled the wheel, the drum fell off with the boy." To the question "Was he then seated upon the drum?" he answered: "I am not sure if he was or whether he grabbed it, because as I had my back to him, I saw that he went with the drum." That nothing else fell from the truck, that the drum "had a loose rope."

Alejandro Ortiz, a merchant, was riding with Méndez, seated on the front part of the truck, the drums were riding behind the noodles boxes, the boxes were "tied, they could not have been loosened in any way," the drums, "I could not tell whether they were tied, but a drum cannot travel on the road without being tied;" They were travelling at a moderate speed, they met without colliding, when "we were a little before the curve . . . . they sounded their horn and I said to him, 'Tocayo, stop, that horn is for you,' '' . . . . "and I said, 'stop, a boy has fallen off,' and I was the first to open the door."

Juan Rivera testified that the width of the highway at the place where the accident occured is 6 meters 8 centimeters, that of the defendant's truck 2 and that of Arroyo 15/8 meters.

The last witness was Alejandro Méndez himself, a partner in the defendant partnership and the driver of the truck on which Hance was riding. In substance he said that he loaded on the truck 99 empty noodles boxes and three empty drums which were placed on the second platform tied "with a hempen rope which encircled the boxes and the tarpaulin and the drums;" That Torres, Hance, and García were riding behind; that he has been a driver since 1930 and is familiar with the highway; that on reaching the curve, he sounded his horn, and on meeting the other truck which was coming up, he heard a blow and stopped; that there was no collision; that he attended to Hance and took him to the hospital; that the chief of police told him "you may go;" that he was carrying three laborers, one of them being Hance, whom he had put to work for another who was ill.

In the report of the ocular inspection it is stated that:

"From the entrance to a road which the Court is informed is called Martín González, the Court finds that in an easterly direction the road is straight and follows a straight line. At the point where the judge is standing, there is a curve which on account of the topography of the soil prevents a view from the angle to the other

side of the highway. At this point, the highway has a width of 6 meters 80 centimeters; toward the left there is a slight slope and to the right a small declivity which forms the gutter, but of very slight depth. The Court also finds that from the point from which the observation has been made and looking toward the west, there is a slight grade. From the place where the judge made his observations to where the defendant states that he stopped his truck, there is a distance of 49 meters 40 centimeters. From the place where the defendant says that he stopped his truck to where the parties agree that the boy fell, there is a distance of 11 meters 60 centimeters. From the place where the defendant says that he stopped his truck to the place where the witnesses for the other side say that he stopped his truck, there is a distance of 41 meters 20 centimeters, the place being in front of the house of the witness Ana María Pérez, and the Court can appreciate that from the gate at the entrance of this witness' house, the place at which the witnesses all agreed that the deceased fell, is perfectly visible. The defendant's truck measures 5.90 meters in length by 2 meters in width. The Court finds that the curve of the highway in front of the Martín González road uniting the two straight stretches of highway, is 30 meters long. The parties admit that the defendant's truck, manufactured by Day-Elder, and which is on the scene at the time of the inspection, measures 5.90 meters in length by 2 meters in width, and the Court also finds that the platform of the truck is, lengthwise, divided by 2 bars or hand-rails, but that it has no lateral bars. The height of the platform of this truck is 1 meter 5 centimeters. The distance between the place in which the other truck driven by Jesús Arroyo stopped and the other end is 6 meters 90 centimeters. The truck of Jesús Arroyo, which is also on the scene of inspection, is at the platform 1 meter 94 centimeters in width; its length is 5 meters 63 centimeters. The parties state that they have no observations to make, and the Court concludes the inspection and orders the same to be made part of the record of the case as part of the evidence.''

In our opinion it appears so clearly from the evidence that the accident was due to the defendant's negligence the error committed by the trial court in holding to the contrary is manifest.

The defendant was negligent in driving at the speed at which he was driving and in entering upon a curve in the middle of the road at such a speed. If he had not gone at

such a speed and if he had kept to his right, he would not have needed to make the violent movement which he did in order to avoid a collision with the other truck, a movement which caused the fall of Hance and his consequent death.

Hance was not one of the laborers attached to the truck, he was riding there to attend to some of the defendant's affairs in another connection. From the circumstances shown by the evidence, his fall cannot be attributed to his own negligence.

It is true that in *Aguayo* v. *Municipality of San Juan*, 35 P.R.R. 390, 392, this Court said: "The evidence in this case tended to show that the driver occupied the middle of the road." An added: "Ordinarily it is not actionable negligence for a driver to occupy any part of the road when no vehicle or person is traveling in either direction in front of him." But this case is very different from the Aguayo case. Here not only was the driver occupying the middle of the road, but driving down the middle and at a high speed, he took a curve which prevented him from knowing whether the road was clear or not (*Cruz et al.* v. *Frau*, 31 P.R.R. 87), as in fact it was not, as a result of which, in order to avoid a collision with another truck which was coming on his right, he was forced to make the rapid and violent maneuver, which he did, and which caused the fall of a person riding on the truck who relied upon his skill and care. In the Aguayo case the question was as to a child who "suddenly ran in front of the automobile," the driver being unable to "avoid the collision" in spite of the fact that he "zigzagged in his attempts to do so."

We believe that the trial court made a good statement of the law applicable to the case when in its opinion it said:

"... The general rule in actions based on negligence is that the occurrence of an accident creates no presumption of negligence, unless the circumstances surrounding the event causing the injury are such as to offer a basis for a reasonable inference that if the person under a duty to do so had exercised due care, diligence and zeal, the

accident would not have happened. This doctrine is cited in the case of *Correa* v. *The Fajardo Sugar Co.*, 29 P.R.R. 318. It is also a well-known rule that there must be at least a reasonable showing of negligence.''

We believe, however, that when the rule thus stated is applied to the facts of this case, one is obliged reasonably to infer that if the driver had observed due care, diligence, and zeal, the accident would not have occurred.

The judgment appealed from must, therefore, be reversed, and substituted by another in favor of the plaintiff, adjudging the defendant to pay to the plaintiff damages which, under all the circumstances, it seems just to fix at $3,000, together with the costs of the suit.

Mr. Justice Wolf dissented.

Mr. Justice Córdova Dávila took no part in the decision of this case.

### DISSENTING OPINION OF MR. JUSTICE WOLF.

This was a case where the District Court of San Juan made a general and special finding that the defendant or the one who was driving the truck herein involved was not guilty of driving it at an undue rate of speed. This may readily be seen by reading the opinion of the court below, the principal part of which is copied in the résumé of the facts made by this Court. The evidence did tend to show that the defendant occupied the center of the road.

Given the findings of the lower court, I do not in turn find sufficient evidence in the record to justify a contradiction of the said finding of the lower court, that is to say, with respect to speed.

Therefore, until a situation arose which made it necessary for the defendant to avoid traveling in the center of the road, the principle set forth in *Aguayo* v. *Municipality of San Juan*, 35 P.R.R. 390 is applicable.

Now, of course, it may be inadvisable to occupy the center of the road on coming around a curve, but as the former

opinion holds it is not negligence *per se.* The burden was on the plaintiff to show something in the realm of negligence besides the occupying of that part of the road. The fact in this case is that the truck of the defendant passed by the other truck without contact of any kind. In my opinion there was no demonstration of the negligence of the defendant.

Even assuming, as it is difficult to do, that the truck of the defendant was traveling at a high rate of speed, I still fail to see that the plaintiff established the negligence of the said defendant. On turning to the right or avoiding the other car a barrel first and then Hance, the plaintiff's son, fell out of the truck. Nobody gives any satisfactory explanation of why the barrel and Hance slipped out of the truck. The principal witnesses were not sure whether Hance was sitting on the barrel or standing alongside of it. To my way of thinking, the probability is that Hance was leaning on the barrel; that the sudden movement of the truck caused him to fall, but that a similar thing might readily have happened, if the defendant had been traveling to the right, had not been moving rapidly, and still had to swerve. Hance evidently must have been in a position of unstable equilibrium. There were several other barrels on the truck and nothing happened to them.

I do not think that it was within the prevision of the defendant that the mounting of the barrels on the truck as he did, would, in case of a sudden swerve, cause anybody traveling on the platform to have a fall. If the defendant might have foreseen this, so could Hance himself. I am far from suggesting that Hance was guilty of contributory negligence, but it seems to me that his fall from the car was an unforeseeable event, or an unfortunate accident.

The judgment ought to have been affirmed.